**Joseph F. AVERSA, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 9, 2012.
Decided Sept. 13, 2012.

Edwin A. Abrahamsen, Jr., Scranton, for petitioner.

Teresa Heacock DeLeo, Assistant Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and COLINS, Senior Judge.

OPINION BY Judge LEAVITT.

Joseph Aversa (Claimant) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) denying his claim for benefits. The Board found that Claimant intentionally threatened a co-worker in an e-mail in which Claimant stated that he would not forget what the co-worker did to him. The statement was held to be willful misconduct, rendering Claimant ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law) [1]. Concluding that Claimant's neutral words were not converted into a threat of harm to property or person by being presented in capital letters, we reverse.

For approximately three years, Claimant worked full-time in sales as a territory manager for U.S. Food Services (Employer). In that position Claimant was as-

signed a specific geographic region and compensated on a commission basis. In January 2011, Employer removed a customer account from Claimant and assigned it to Jim Mowery, another territory manager, because Employer believed that Claimant had acted improperly to build an account in Mowery's region. To implement the account transfer, Claimant sent Mowery, by e-mail, a spreadsheet showing the account history when it had belonged to Claimant. The spreadsheet was sent as an attachment; the transmittal message from Claimant read as follows:

Hey Jim, you set me up pretty good . . . I WON'T FORGET IT. Certified Record (C.R.——), Item 18, Exhibit E-2 at 2 (Ex. ——). Mowery forwarded Claimant's e-mail to Employer without comment. Three days later, on January 24, 2011, Claimant met with Employer, where he acknowledged that his e-mail message was not professional. Employer discharged Claimant at the end of the meeting.

Claimant applied for unemployment compensation benefits. In his application, Claimant stated that he had been discharged, explaining that "I was accused of threatening a fellow employee." C.R., Item 2 at 3. He also stated that "[a] fellow employee lied about a work related incident that got me in trouble through no fault of my own." C.R., Item 2 at 4. The UC Service Center denied Claimant benefits on grounds of willful misconduct. Claimant appealed, and a hearing was held before a Referee on May 25, 2011.

At the hearing, Employer's Human Relations Manager, Alicia Adams, testified. Adams explained that approximately ten years earlier, Employer experienced an in-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). In relevant part, Section 402(e) provides that an employee is ineligible for compensation when "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work . . . [.]" 43 P.S. § 802(e).

cidence of workplace violence that ended in a fatality. Employer responded by adopting a workplace violence prevention policy. Adams explained that this policy is not limited to physical violence in the workplace but also includes threats, intimidation, and harassment. Employer's policy is contained in Employer's "Associate Handbook," which Claimant received when he was hired. Further, he signed an acknowledgement stating that he had received, read, and understood the handbook. C.R., Item 18, Ex. E–1.

The Associate Handbook contains Employer's "workplace violence prevention" policy, and it states, in relevant part, that

*[Employer] will not tolerate any actions, statements, or other behavior by anyone that is, or is intended to be, violent, threatening, intimidating, disruptive, aggressive or harassing,* as determined by [Employer] in its sole discretion. This means [Employer] will take appropriate action, up to and including termination of employment, in response to such conduct. This policy applies to associates, temporary workers, consultants, contractors, customers, vendors, visitors and all other individuals, while on [Employer's] premises (whether owned or leased) or while conducting Company business (including travel).

C.R., Item 3. The Associate Handbook provides that those who violate the workplace violence policy will be immediately escorted from the workplace pending investigation. It also provides that Employer reserves the right to determine all violations and the sanction, up to and including a termination of employment.

Adams testified that Claimant was discharged for the e-mail to Mowery, which

Employer believes that Claimant had "intended to be ... threatening," in violation of the Associate Handbook. *Id.* Adams reported that at her meeting with Claimant, he expressed regret for his e-mail to Mowery but did not think that its language was threatening. Claimant told Adams that he was disturbed by losing his client and was angry when he sent the e-mail to Mowery. Adams testified that she found Claimant's use of capitalized letters in the e-mail to convey a threat and that Mowery told her that he found Claimant's e-mail threatening. Adams acknowledged that Claimant had apologized both to Mowery and to the division president.

Claimant then testified. He stated that a few months before his termination, he had secured a new contract in his territory with a convenience store that was owned by the daughter of one of Mowery's clients. Recognizing the potential for a conflict over the convenience store client, Claimant obtained permission from Mowery and Mowery's district manager to open the account. The convenience store's owner explained to Claimant that she intended to phase out a rival supplier and would be increasing her orders in the future. When orders from the convenience store increased, Claimant attributed this to the phase-out of the rival supplier. However, it turned out that this increase was the result of the convenience store owner ordering products for use at the diner owned by her father.[2] The diner was Mowery's client. Employer investigated the matter, telling Claimant that "one of the [c]ooks" at the diner informed Employer that Claimant was reviewing Mowery's invoices and beating his prices. Notes of Testimony, May 25, 2011, at 6 (N.T. ——). Claim-

---

2. Apparently, and unbeknownst to Claimant, the diner was in financial difficulties and behind in its payments to Employer. To help

her father's diner, the convenience store owner made the food purchases for the diner.

ant denied the accusation as false. Employer stripped him of the convenience store account.

Claimant explained that when he sent the e-mail to Mowery, he was angry that Employer believed that he would act "underhandedly like that when I [did] not." N.T. at 11. Claimant believed that the cook, whom he had never met, had lied at Mowery's instigation. When asked if he intended a threat with the e-mails, Claimant responded:

> Absolutely not. I just wanted to make him aware that I knew what he was doing. And that I wouldn't forget it because I didn't want it to happen to me again.

N.T. 12. When asked whether he intended to intimidate Mowery, Claimant responded: "No, I just—well, in my mind I wasn't threatening him. I just wanted him to know that I would remember it and not let it happen again." *Id.*

The Referee found that Claimant violated Employer's workplace violence prevention policy. Specifically, the Referee stated:

> Claimant's email was intentional and deliberate to warn the coworker that the Claimant considered the co-worker had "set me up pretty good". The tone of the message was strong with the Claimant capitalizing the letters in the phrase "I WON'T FORGET IT". The Claimant's message was clearly hostile and intimidating.

Referee Decision at 2. The Referee concluded that Claimant committed willful misconduct, rendering him ineligible for benefits under Section 402(e) of the Law, 43 P.S. § 802(e).

■ Claimant appealed, and the Board affirmed. The Board adopted the Referee's findings of fact and conclusions of law and made its own additional findings. Specifically, the Board stated that it did "not credit [C]laimant's testimony that he did not intend for the e-mail to be threatening, harassing, or intimidating." Board Adjudication at 1. Claimant petitioned for this Court's review.[3]

■ On appeal,[4] Claimant raises two issues. First, he contends that substantial evidence does not support the Board's finding of willful misconduct. Claimant argues that he responded to Mowery's accusation that he was stealing a client, which was false, with the statement that he would not forget it. He contends that he did not deliberately violate Employer's work rules and, further, he did not expect that his e-mail could be interpreted to violate the workplace violence policy. Second, he contends that his e-mail to Mowery does not rise to the level of willful misconduct.

■ We begin with a review of the law on willful misconduct. Although not defined in the Law, the courts have established that it means the following:

> (1) an act of wanton or willful disregard of the employer's interest;

---

3. Our review is limited to determining whether constitutional rights were violated, whether errors of law were committed, and whether findings of fact are supported by substantial evidence. *Beddis v. Unemployment Compensation Board of Review*, 6 A.3d 1053, 1055 n. 2 (Pa.Cmwlth.2010).

4. The Board's findings of fact are conclusive on appeal if supported by substantial evidence. *Rossi v. Unemployment Compensation Board of Review*, 544 Pa. 261, 266 n. 4, 676 A.2d 194, 197 n. 4 (1996). In the case *sub judice*, Claimant does not specifically dispute any of the Board's factual findings. Accordingly, they are binding on appeal. *Beddis*, 6 A.3d at 1055.

(2) a deliberate violation of the employer's rules;

(3) a disregard of standards of behavior which the employer has a right to expect of an employee; [or]

(4) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Altemus v. Unemployment Compensation Board of Review,* 681 A.2d 866, 869 (Pa. Cmwlth.1996). The question of whether conduct rises to the level of willful misconduct is a question of law to be determined by this Court. *PMA Reinsurance Corp. v. Unemployment Compensation Board of Review,* 126 Pa.Cmwlth. 94, 558 A.2d 623, 625 (1989). It is the employer's burden to establish that a claimant's conduct constituted willful misconduct. *Conemaugh Memorial Medical Center v. Unemployment Compensation Board of Review,* 814 A.2d 1286, 1288 (Pa.Cmwlth.2003).

■ Where willful misconduct is based upon the violation of a work rule, the employer must establish the existence of the rule, its reasonableness, and that the employee was aware of the rule. *Bishop Carroll High School v. Unemployment Compensation Board of Review,* 125 Pa. Cmwlth. 302, 557 A.2d 1141, 1143 (1989). Stated another way, "the employer must show the existence of the rule and its *knowing* violation." *BK Foods, Inc. v. Unemployment Compensation Board of Review,* 119 Pa.Cmwlth. 632, 547 A.2d 873, 875 (1988) (emphasis original). Once employer makes this showing, the burden shifts to the claimant to prove that the rule was unreasonable or that he had good

cause for violating the rule. *Gillins v. Unemployment Compensation Board of Review,* 534 Pa. 590, 601 n. 3, 633 A.2d 1150, 1156 n. 3 (1993).

■ Adams' testimony established that Employer's workplace violence prevention policy proscribed physical violence as well as actions *intended* to threaten or intimidate fellow employees. Employer also established that Claimant had received and read the Associate Handbook, which contained the workplace violence prevention policy. The question is whether Employer proved that Claimant's e-mail was intended to threaten, harass or intimidate Mowery.[5] We conclude that it did not.

■ Claimant testified that he did not think that what he said was a threat and, further, he did not intend to threaten Mowery. The Board did not believe Claimant, but this is not dispositive of whether Claimant's e-mail was, as a matter of fact, intended to convey a threat.[6]

The facts in this case are not in dispute as they relate to the e-mail. Claimant acknowledges that he sent it, and the words contained therein are not in dispute. There may be a dispute about Claimant's belief that he lost the account on false grounds, but that also is irrelevant. The only question is whether Claimant's words in the type size chosen were intended to communicate a threat. Notably, the type size used in the e-mail is much smaller than the type size used in this opinion.

The Associate Handbook does not define the terms "intimidation," "threats" or "harassment," or provide examples of such

---

**5.** Notably, Employer dismissed Claimant for the "threatening language" in his e-mail to Mowery, not for harassing or intimidating language.

**6.** The Board is the ultimate fact-finding body, empowered to resolve conflicts in evidence,

determine the credibility of witnesses, and determine the weight to be assigned evidence. *Unemployment Compensation Board of Review v. Wright,* 21 Pa.Cmwlth. 637, 347 A.2d 328, 329 (1975).

behavior.[7] A threat or act of intimidation is an act or statement that is intended to prevent another from exercising a legal right. Warning a co-worker not to lie in the future is not, therefore, intimidation. We focus on whether it was a threat because the record shows that Employer's stated reason for dismissing Claimant was the "threatening language" he used in the e-mail to Mowery. C.R., Item 4, "Employee Disciplinary Report," at 7.

■ A "threat" is defined as a communication that conveys an "intent to inflict harm or loss on another or on another's property." BLACK'S LAW DICTIONARY 1519 (8th ed.2004). Claimant's e-mail did not threaten Mowery with harm to his person or property. It did not state, for example, "I am going to get you" or "You will be sorry." Even those examples may be too vague to convey an intentional threat. By contrast, "I am going to beat you up" or "I am going to burn down your house" leave no doubt in the reader's mind. Factfinders err when they try to make a finding of positive fact on the basis of a negative credibility determination. *See, e.g., Yi v. State Board of Veterinary Medicine*, 960 A.2d 864, 874–75 (Pa.Cmwlth.2008). The Board did not believe Claimant's statement that he did not intend to convey a threat, but that credibility determination is not substantive evidence that Claimant did, in fact, intend a threat. An adverse credibility determination is not itself substantial evidence. *Id.* at 875.

To find that Claimant intended a threat requires evidence. This evidence could take the form of an admission by Claimant to a third party, such as "I sent a threat to Mowery today." Otherwise, the words of the statement itself must establish, objectively, the intended threat.

Adams believed that because "I won't forget it" was written in capitalized letters, it conveyed a threat. Adams did not consider the fact that capitalized letters in an e-mail are still quite small.[8] The context of a remark is also relevant. *Bush v. Unemployment Compensation Board of Review*, 48 Pa.Cmwlth. 291, 409 A.2d 523, 524 (1980) (holding that a finding of willful misconduct on the basis of use of proscribed language requires consideration of the context in which the language is used). A message transmitted through cyberspace does not contain the same force or immediacy of an in-person exchange; it is absent of voice or hand gesture. Further, there is nothing threatening about the words "I won't forget it." The use of capitalized letters adds emphasis, but it did not transform a four-word declarative sentence into a threat of violence. The message was not sent anonymously. Adams' subjective construction is not itself substantial evidence of Claimant's intent.

The words in the e-mail convey two points: Claimant noted Mowery's perceived perfidy and informed Mowery that he was not going to forget Mowery's act. Neither constitutes a threat. At most, the e-mail conveys the information that Claimant is angry and bears a grudge. The Associate Handbook does not forbid expressing anger or harboring grudges.

■ In sum, we hold that by objective standards, the e-mail did not convey an

---

7. "Harassment" is defined as "[w]ords, conduct, or action (usu. repeated or persistent) that ... annoys, alarms, or causes substantial emotional distress" in the person to whom it is directed. BLACK'S LAW DICTIONARY 733 (8th ed.2004). "Intimidation" is "[u]nlawful coercion; extortion." *Id.* at 841.

8. In his on-line application for benefits, Claimant used all capitalized letters. It seems unlikely that he meant to intimidate the government in his application.

intential threat or a wanton and deliberate violation of Employer's workplace violence policy.[9]  Accordingly, we reverse.

Judge LEADBETTER dissents.

### ORDER

AND NOW, this 13th day of September, 2012, the order of the Unemployment Compensation Board of Review, dated August 19, 2011, in the above-captioned matter is hereby REVERSED.

9.  We recognize that Employer purported to give itself the "sole discretion" to determine whether conduct is threatening.  Employer cannot confer upon itself the discretion to bind the Board or this Court in deciding whether certain conduct constitutes willful misconduct.  If that were the case, Employer could argue that uttering the phrase "Have a nice day" is a threat; a violation of its work rule; and willful misconduct.