IN THE COMMONWEALTH COURT OF PENNSYLVANIA

H.B. Arrison of West Virginia, Inc.,     :
                 Petitioner     :
                                      :
            v.                    :
                                      :
Unemployment Compensation Board    :
of Review,                             :    No. 645 C.D. 2019
                 Respondent    :    Submitted: February 11, 2020


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                            FILED: February 28, 2020


       H.B. Arrison of West Virginia, Inc. (Employer) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) April 30, 2019 order reversing the Referee's decision denying UC benefits under Section 402(e) of the UC Law (Law).[1] Employer presents one issue for this Court's review: whether the UCBR erred by concluding that Edward J. Ramsey (Claimant) did not commit willful misconduct. After review, we affirm.

       Claimant worked for Employer as a part-time sawmill yard worker. In October 2018, Claimant was involved in an altercation with co-workers which Claimant reported to Employer as racially-charged.[2] Thereafter, Claimant was involved in a second altercation with a co-worker in which Claimant grabbed the co-worker by the throat (Second Incident). According to Employer's Office Manager Samantha Greene (Greene), the argument arose from an off-duty incident where the

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (referring to willful misconduct).

[2] Claimant was Employer's only African-American employee.

co-worker used racial epithets.  On October 24, 2018, Employer suspended Claimant without pay.  On October 30, 2018, Claimant told Greene that he planned to get himself fired so he could collect unemployment benefits while attending school to learn a new trade.  On October 31, 2018, Claimant appeared for his shift, but Employer's General Manager Nathan Sisler (Sisler) terminated Claimant's employment.

Claimant applied for UC benefits.  On December 10, 2018, the Indiana UC Service Center (UC Service Center) determined that Claimant was ineligible for UC benefits under Section 402(e) of the Law.  Claimant appealed and a Referee hearing was held on February 1, 2019.

At the hearing, Employer's President Bryan Vernon (Vernon) testified that in order to personally address the incidents, he travelled from Georgia to the Pennsylvania worksite to meet with Claimant and the other employees to provide training and information on proper workplace behavior.  *See* Reproduced Record (R.R.) at 67a.  Vernon admitted that during his meeting with Claimant, Claimant reported to Vernon that he was being harassed at work.  *See* R.R. at 70a.

Vernon acknowledged that even after the Second Incident, he planned to continue to employ Claimant and he believed the matter had been resolved.  Vernon explained:

> I actually spoke the most with [Claimant] and [the other employee] when I spoke with them both privately about what had happened.  And I even asked the question, are they both willing to put what happened behind them to move forward and could they abide by what we just discussed, and what I discussed with the group then is basically the same thing that I had spoke [sic] with each of these guys about.
>
> . . . .

As far as I was concerned . . . it was done. [Claimant] . . . was coming back to work the next . . . scheduled day of work listed.

R.R. at 68a.

Greene testified that on October 30, 2018, Claimant's first scheduled work day following his suspension, Claimant stopped at her desk and confided[3] to Greene, "**what I'm thinking about doing** is taking the coal mining test. . . . [S]o what I'm **going to try to do** is get myself fired so I can collect unemployment while I'm going to school."[4] R.R. at 55a (emphasis added). Greene related that Claimant's statement left her in shock. Greene stated that she told Claimant they would talk later, and once Claimant left her desk, she called Vernon to inform him of Claimant's statement. Greene reported that Claimant's statement raised concerns with respect to

[s]afety for everybody there, just the issues that it would cause, what's he going to do to get himself fired. I mean, we had previous issues in the past, so I don't know if that's, you know – he was doing things to work himself up to that to get himself fired already[.]

R.R. at 56a.

On February 11, 2019, the Referee affirmed the UC Service Center's determination denying UC benefits. Claimant appealed to the UCBR. On April 30, 2019, the UCBR reversed the Referee's decision and awarded Claimant UC benefits. Employer appealed to this Court.[5]

Employer argues that the UCBR erred by reversing the Referee's decision because it did not consider Claimant's statement in the context of Claimant's

---

[3] Claimant testified that he considered Greene to be a friend. *See* R.R. at 73a.

[4] Notably, Claimant denied that he told Greene he was going to try to get himself fired. *See* R.R. at 80a.

[5] "Our scope of review is to determine whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence." *Allen v. Unemployment Comp. Bd. of Review*, 189 A.3d 1128, 1133 n.3 (Pa. Cmwlth. 2018).

3

work history and prior warnings, but instead, isolated Claimant's statement when it concluded Claimant's actions did not constitute willful misconduct. Employer emphasizes that verbal and physical fighting and threats of violence constitute willful misconduct. *See* Employer Br. at 15-16. Employer contends that Claimant's statement that he planned to get himself fired so he could collect UC benefits communicated a threat in light of Claimant's past unruly behavior, and thus, constituted willful misconduct.[6]

Section 402(e) of the Law provides that an employee shall be ineligible for UC benefits for any week in which his unemployment is due to discharge or suspension for willful misconduct.

> [W]illful misconduct is defined by the courts as: (1) **wanton and willful disregard of an employer's interests**; (2) deliberate violation of rules; (3) **disregard of the standards of behavior which an employer can rightfully expect from an employee**; or, (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations. The employer bears the initial burden of establishing a claimant engaged in willful misconduct. Whether a claimant's actions constitute willful misconduct is a question of law fully reviewable on appeal.

> The issue of whether Claimant's conduct constituted willful misconduct under Section 402(e) of the Law is a question of law fully reviewable by this Court. Further, Employer bears the initial burden of showing Claimant's conduct rose to the level of willful misconduct.

---

[6] Employer contends that the UCBR punished Employer for attempting to rehabilitate Claimant rather than terminating his employment after the first dispute, since Claimant "would clearly have been ineligible for [UC] benefits had Employer terminated [Claimant's employment] for the altercations that preceded [Vernon's] meeting with the employees at issue." Employer Br. at 16. Employer also asserts that rather than terminating Claimant's employment, Employer retrained Claimant, and despite the retraining, he made the statement to Greene. Notwithstanding, Claimant's employment was terminated **not** for conduct for which he had been previously disciplined, **but for the statement he made**. *See* R.R. at 14a-15a, 18a, 19a, 121a.

*Johns v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1009-10 (Pa. Cmwlth. 2014) (emphasis added; citations omitted).

> In addition,
>
> [i]n the willful misconduct context, this Court defined a threat '**as a communication that conveys an 'intent to inflict harm or loss on another or on another's property**.'' *Aversa v. Unemployment Comp. Bd. of Review*, 52 A.3d 565, 571 (Pa. Cmwlth. 2012) (quoting Black's Law Dictionary 1519 (8th ed. 2004)). **Absent intent, the words of the statement itself must objectively establish a threat**. In addition to the words used in a threat, this Court is mindful of the effect the statement has on the hearer, and the reasonableness of construing the statement as a credible threat in context. . . .
>
> Our Supreme Court's test to discern a 'true threat' in a non-criminal case (expulsion of student from school) informs our analysis here. *See J.S. v. Bethlehem Area Sch. Dist.*, . . . 807 A.2d 847 ([Pa.] 2002). In *J.S.*, to determine threatening nature, our Supreme Court applied a totality of the circumstances test. Relevant factors to consider are: 'the statements, the context in which they were made, the reaction of listeners and others as well as the nature of the comments . . . .' *Id.* at . . . 858.

*Johns*, 87 A.3d at 1010-11 (emphasis added; footnote omitted). A statement that does not rise to the level of an actual threat does not constitute willful misconduct. *Blount v. Unemployment Comp. Bd. of Review*, 466 A.2d 771 (Pa. Cmwlth. 1983). Further, "[w]hether [a] threat [is] conditional in nature and whether the employee indicate[s] any intent to act according to the remark are factors which can play a role in a determination that a threat [is] *de minimis* in nature[,]" and thus does not constitute willful misconduct. *Id.* at 773.

In the instant matter, the UCBR reversed the Referee's decision and granted Claimant UC benefits, explaining:

> It is now well settled that if there is no willful misconduct in the final incident for which a claimant has been discharged[,] a denial of benefits cannot ensue under Section 402(e) of the Law.
>
> [Employer] discharged [Claimant] for stating to the office manager that he was going to try to get fired to collect unemployment benefits while going to school. [Employer's] witnesses testified to safety concerns about how [Claimant] would potentially attempt to get fired due to the worksite being a saw[]mill. There was also testimony about a previous incident involving [Claimant] and other employees that resulted in [Claimant's] unpaid suspension. However, [Claimant] was not terminated for [that] incident, as he had an unpaid suspension, and returned to work. There was no evidence that [Claimant] had a specific plan for getting fired or that [Claimant] refused to follow any policies or refused to do any work. As such, [Employer's] safety concerns were merely speculative based on a vague comment without any bad act by [Claimant]. [Employer] has not shown any willful misconduct by [Claimant] that resulted in his discharge.

UCBR Decision at 2, R.R. at 121a.

Importantly, Employer did **not** terminate Claimant's employment for engaging in conduct for which he had been previously disciplined, *i.e.*, arguing or fighting. In fact, Vernon testified he intended to continue to employ Claimant after the incidents. Employer was not sufficiently concerned about Claimant's conduct to contact police or to terminate Claimant's employment following the prior incidents with his co-workers. Rather, Employer terminated Claimant's employment as a direct result of his statement to Greene.[7] Despite Claimant's prior incidents with Employer's employees which resulted in Claimant's suspension, this Court concludes that Claimant's vague comment describing "what [he was] thinking about doing" and what he was "going to try to do" with respect to taking actions to get himself fired

---

[7] There is no record evidence that Claimant engaged in further confrontations with his co-workers before Employer terminated his employment.

6

was, under the totality of the circumstances, *de minimis* in nature and did not constitute an actual threat of physical violence. R.R. at 55a. In fact, Greene testified that Claimant's statement "could have involved anything." R.R. at 63a. According to Greene, after notifying Vernon about Claimant's statement, she simply "went about [her] day." R.R. at 56a. Sisler explained that Claimant's statement caused him concern because "there's a lot of safety around that saw[]mill. We need a – all accidents can happen, and **I don't know what someone would do to get fired**. But, it definitely could . . . end up in . . . a really bad mishap, somebody getting hurt or killed[.]" R.R. at 64a (emphasis added).

> In addition, Vernon recounted:
>
> [W]hen [Claimant] made that statement, I – after what had just happened and what we just went through, **I didn't know what he planned to do**, and I was concerned for the safety of not only the employees that are out there working, but also [Greene]. **I didn't want to take any chances** of either the equipment or the men getting damaged or hurt.

R.R. at 68a (emphasis added). Notably, there is no record evidence that anyone contacted police on Employer's behalf regarding safety concerns arising from Claimant's statement.

The aforementioned testimony reveals that Employer's representatives were concerned regarding what Claimant **could** do rather than by the actual threats Claimant made.[8] Accordingly, the UCBR properly concluded that "[E]mployer's

---

[8] *See Berkley Med. Res. Inc. v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth. No. 1383 C.D. 2013, filed June 6, 2014) (where a claimant stated she was going to punch a co-worker in the face if something was not done about the co-worker, the claimant's statements "were not threats, but instead were simply a means by which [the claimant] was venting her anger" and the claimant's employment was "essentially terminated because of the possibility that she **might** commit some future act[.]"), slip op. at 11 (emphasis added). Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), unreported opinions are not binding precedent, but may be cited for their persuasive value. *Berkley* is cited for its persuasive value.

safety concerns were merely speculative based on a vague comment without any bad act by . . . [C]laimant." R.R. at 121a.

In addition, the record evidence does not support Employer's contention that Claimant's statement was a "wanton and willful disregard of an employer's interests" or a "disregard of the standards of behavior which an employer can rightfully expect from an employee[.]" *Johns*, 87 A.3d at 1009. The statement Claimant made to Greene (whom Claimant considered to be a friend) occurred during a private conversation between the two employees. Claimant testified that he was frustrated by alleged racially discriminatory incidents, Employer's purported failure to address Claimant's concerns, and his suspension. There is no record evidence that Claimant took **any** steps to carry out the actions described in his statement, and as the UCBR noted, "[t]here was no evidence that [Claimant] had a specific plan for getting fired or that [Claimant] refused to follow any policies or refused to do any work." R.R. at 121a. Accordingly, the UCBR properly concluded that Claimant's statement did not constitute willful misconduct.[9]

For all of the above reasons, the UCBR's order is affirmed.



ANNE E. COVEY, Judge

---

[9] This Court has often stated that 'there is a critical distinction between the employer's right to terminate employment and the state's right to deny unemployment benefits.' *Palladino v. Unemployment Comp*[.] *B*[*d.*] *of Review*, 81 A.3d 1096, 1103 (Pa. Cmwlth. 2013) (citation omitted). To be sure, 'the question of justifiable termination and eligibility for unemployment benefits are two different things; an employee may be fired for completely proper reasons, yet remain eligible for benefits.' *Id.* at 1101 (citation omitted).

*Miller v. Unemployment Comp. Bd. of Review*, 131 A.3d 110, 116 n.9 (Pa. Cmwlth. 2015).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

H.B. Arrison of West Virginia, Inc.,     :
                          Petitioner     :
                                         :
                  v.                     :
                                         :
Unemployment Compensation Board          :
of Review,                               :     No. 645 C.D. 2019
                          Respondent     :

## O R D E R

AND NOW, this 28th day of February, 2020, the Unemployment Compensation Board of Review's April 30, 2019 order is AFFIRMED.


_____
ANNE E. COVEY, Judge