IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeff Dunn,                                    :
                          Petitioner          :
                                              :
          v.                                  :     No.  605 M.D. 2017
                                              :     Argued:  February 9, 2021
Pennsylvania Department of Human              :
Services,                                     :
                          Respondent          :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                         FILED:  April 19, 2021


          Before us in our original jurisdiction are the preliminary objections in
the nature of a demurrer filed by the Pennsylvania Department of Human Services
(Department) to claims made by Jeff Dunn (Dunn) under the Whistleblower Law.[1]
Dunn alleges his discharge from employment was retaliatory as it followed his reports
of a supervisor's alleged workplace violence incidents reportable and enforceable
under management directives and internal policies, the violation of which forms the
basis of his claim.  The Department contends that the alleged workplace violence did
not qualify as wrongdoing under the statutory definition.  It also asserts that Dunn did
not establish a causal connection between the alleged wrongdoing and his discharge.
At this stage, as the allegations are sufficient to state a statutory claim, we overrule
the preliminary objections and direct the Department to answer the petition for review.

_____
[1] Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§1421-1428.

## I. Factual Averments/Background

Dunn initiated this case by writ of summons in 2017.[2] In January 2020, he filed a "complaint" asserting a claim under the Whistleblower Law (Petition),[3] against his former employer, Warren State Hospital (Hospital or Employer),[4] alleging the following facts.

From his hire in February 2016, until his discharge from employment in July 2017, Dunn was the Institutional Safety Manager. In that capacity, it was Dunn's job to report safety issues and threatening behavior. *See* Pet. ¶11.

Dunn alleges he was the victim of workplace violence (threats and humiliation) throughout his 17-month tenure at the Hospital at the hands of Ronnie Cropper, the Hospital Chief Operating Officer (COO). *See* Pet. ¶¶3-9. Dunn was on probationary status and he consistently received unsatisfactory performance reviews from COO until his termination from employment on July 21, 2017. *Id.* ¶¶2-3. Dunn reported a near physical assault by COO on March 9, 2017 (March Report). *Id.* ¶4. He made a second report related to an incident on July 12, 2017 (July Report), outlining COO's poor treatment of him days before his discharge. Both incidents involved COO yelling at Dunn in anger in the workplace.

[2] Under Section 4 of the Whistleblower Law, 43 P.S. §1424, an action must be filed within 180 days of the alleged violation of the Whistleblower Law. However, commencing suit by filing and serving a writ of summons tolls the 180-day statute of limitations. *Collins v. Crago* (Pa. Cmwlth., No. 1876 C.D. 2016, filed Sept. 15, 2017), slip op. at 5, 2017 WL 4079024, at *2 (unreported) (citing *Galbraith v. Gahagen*, 204 A.2d 251 (Pa. 1964)).

[3] Though entitled "complaint," the initial pleading in our original jurisdiction is a petition for review; as such, we directed that we would address Dunn's Petition in our original jurisdiction.

[4] Hospital is owned and operated by the Department, and thus qualifies as an "Employer." Section 2 of the Whistleblower Law defines "Employer" in pertinent part as: "A public body . . . which receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body . . . ." 43 P.S. §1422. "Public body" includes: "(1) A State officer, agency, department, division, bureau, board, commission, council, authority or other body in the executive branch of State government." *Id.*

Specifically, in the March Report, Dunn described the difficult history with COO, with scheduled weekly meetings where COO often screamed at him in anger. *See* Pet., Ex. A. The March Report described a particular incident in COO's office during a weekly one-on-one meeting when "[COO] came out of his chair, raising his arms above his head and with his fist clenched and began screaming his words at [Dunn.]" *Id.* Dunn reported: "I felt threaten[ed] by [COO's] hostility and total disrespect toward me. I thought he may decide to throw something at me this time. Although [COO] did not, I felt very threatened and again humiliated." *Id.*

The July Report states that COO yelled at him in front of other coworkers, and was very angry, stating he was "very annoyed with [Dunn]." Pet., Ex. B. The July Report was corroborated by a "Witness Statement" of the Labor Relations Coordinator who witnessed the July incident. She confirmed COO's behavior toward Dunn, describing COO as "visibly angry." *See* Pet., Ex. C. Dunn appended both reports to his Petition. *See* Pet., Exs. A (March Report) and B (July Report) (collectively, Reports). Although Dunn was terminated from his employment for allegedly unsatisfactory performance, he alleges he received unsatisfactory reviews due to COO's animus toward him, not based on poor performance.

Dunn alleges COO's treatment of him constituted workplace violence in violation of: the Department's program manual concerning workplace violence; an employee training manual regarding proper workplace behavior and violence in the workplace; and Management Directive Nos. 205.16 and 205.33. *See* Pet. ¶14. Management Directive No. 205.33, issued June 16, 2014, "Workplace Violence," establishes policy, responsibilities, and procedures on preventative measures and responses to violence in the workplace (WPV Directive). It requires managers and supervisors to be proactive . . . to minimize risk of workplace violence consistent

3

with operational considerations, and to initiate corrective action and discipline where warranted. *See* Pet. ¶14(B). As relief, Dunn seeks full reinstatement (including fringe benefits and seniority rights), back wages, and actual damages including damages for emotional and/or mental distress, plus counsel fees and costs of litigation, and prejudgment interest. *See* Section 5 of the Whistleblower Law, 43 P.S. §1425.

The Department filed preliminary objections in the nature of a demurrer challenging the legal sufficiency of the Petition under Pa.R.C.P. No. 1028(a)(4). The Department contends Dunn did not establish any reportable wrongdoing or waste to state a claim under the Whistleblower Law. It asserts COO's actions did not constitute workplace violence, the reporting of which is enforceable by the Department. The Department also argues Dunn did not demonstrate a causal nexus between his discharge and the Reports to show the retaliation element. In his response, Dunn "concur[red] that [COO's] conduct was not 'waste'" under the statute. Reply to Prelim. Objs. at 3.

After briefing and argument, we consider the legal issue before us.

## II. Issues

The primary issue before the Court is whether COO's treatment of Dunn in the workplace (yelling and raising fist) may qualify as wrongdoing actionable under the Whistleblower Law. The secondary issue is whether there are sufficient allegations of a causal connection between the Reports and Dunn's discharge.

## III. Discussion

The Department's preliminary objections challenge the sufficiency of Dunn's Petition on two grounds: (1) that COO's conduct does not constitute wrongdoing under the statute; and (2) that Dunn cannot establish a causal connection between his July Report of workplace violence and his discharge a few days later.

## A. Preliminary Objection Standard

"In deciding a preliminary objection in the nature of a demurrer, we accept as true the fact averments in the [petition for review] and all reasonable inferences arising therefrom." *Sea v. Seif*, 831 A.2d 1288, 1291 (Pa. Cmwlth. 2003). "In addition, courts reviewing preliminary objections may not only consider the facts pled in the complaint, but also any documents or exhibits attached to it." *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014). "Because the sustaining of a demurrer results in the denial of a claim or the dismissal of a suit, it should be sustained only in cases that are clear and free from doubt, and only where it appears, with certainty, that the law permits no recovery under the allegations pleaded." *Rodgers v. Pa. Dep't of Corr.*, 659 A.2d 63, 65 (Pa. Cmwlth. 1995) (citation omitted) (overruling Department of Corrections' demurrer to whistleblower claim). "Where [any] doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *Gray v. Hafer*, 651 A.2d 221, 223 n.2 (Pa. Cmwlth. 1994) (sustaining demurrer to whistleblower claim, allowing amendment).

In his Petition, Dunn avers that the Department terminated his employment in retaliation for reporting two incidents of workplace violence by COO. He claims the incidents described in the March and July Reports constitute reportable violations of the workplace violence provisions in the employee manual and the Management Directives cited, and thus qualify as "wrongdoing" under the Whistleblower Law. While conceding that the WPV Directive is a code of conduct enforceable under the Whistleblower Law, *see* Prelim. Objs., ¶28, the Department contends COO's conduct toward Dunn did not constitute "workplace violence" as defined by that directive. The Department also argues Dunn did not demonstrate a causal connection between the Reports and his discharge.

5

## B. Whistleblower Law

In this case, the relevant provisions of the Whistleblower Law are Section 2, which defines "wrongdoing," and Section 3, which prohibits an employer's retaliation against an employee based on that employee's report of wrongdoing.

Section 2 of the Whistleblower Law defines "wrongdoing" as: "<u>A violation</u> which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or <u>of a code of conduct</u> or ethics <u>designed to protect the interest of the public or the employer</u>." 43 P.S. §1422 (emphasis added). Section 3(b) of the Whistleblower Law provides:

> Persons not to be discharged.--No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing . . . by a public body . . . .

43 P.S. §1423(b). *See generally Sabater v. Pa. Ins. Dep't* (Pa. Cmwlth., No. 637 M.D. 2014, filed Jan. 3, 2019), 2019 WL 81868 (unreported).[5]

"The Whistleblower Law is not designed to provide insurance against discharge or discipline for an employee who informs on every peccadillo of his fellow employees." *Evans v. Thomas Jefferson Univ.*, 81 A.3d 1062, 1070 (Pa. Cmwlth. 2013). To state a claim under the Whistleblower Law, the petitioner must allege that he made a good faith report of wrongdoing to the appropriate authorities prior to the alleged retaliation. *See* Section 4(b) of the Whistleblower Law, 43 P.S. §1424(b). Merely demonstrating that he was terminated sometime after making a report does not suffice. *See Golaschevsky v. Dep't of Env't Prot.*, 720 A.2d 757, 759

---

[5] We cite this unreported decision for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

(Pa. 1998). Instead, "[t]he causal connection that the Whistleblower Law requires must be demonstrated by concrete facts or surrounding circumstances that the report of wrongdoing . . . led to the [petitioner's] dismissal, such as that there was specific direction or information received not to file the report or that there would be adverse consequences because the report was filed." *Evans*, 81 A.3d at 1070 (quoting *Golaschevsky*, 720 A.2d at 759) (internal quotes omitted).

If a petitioner proves a causal connection between his report of wrongdoing and his subsequent discharge, the burden shifts to the respondent to show that its actions were lawful. *See O'Rourke v. Dep't of Corr.*, 778 A.2d 1194, 1200 (Pa. 2001); *see also* Section 4(c) of the Whistleblower Law, 43 P.S. §1424(c). "[A]n employer should not incur liability for independently justified adverse personnel action simply because animus may exist based upon prior reports of wrongdoing." *O'Rourke*, 778 A.2d at 1204.

### 1. Wrongdoing & Workplace Violence

"Wrongdoing" under the Whistleblower Law is generally a violation of a legal obligation for which a public body is charged with enforcement. *See Golaschevsky*, 720 A.2d at 759. Additionally, to qualify, the reported violation must be of the type "that the employer is charged to enforce for the public good or relate to the internal administration of the public employer." *Sukenik v. Twp. of Elizabeth*, 131 A.3d 550, 555 (Pa. Cmwlth. 2016) (emphasis added). *See Gray*, 651 A.2d at 224.

"Wrongdoing" expressly includes violations of codes of conduct. *Golaschevsky*. Critically, the Department acknowledges that Management Directive No. 205.33, regarding "Workplace Violence," *i.e.*, the WPV Directive, qualifies as an enforceable code of conduct such that reportable conduct thereunder, if qualifying

7

as wrongdoing, may form the basis for a Whistleblower Law claim.[6]  *See* Prelim. Objs., ¶28, Resp't's Br. at 7.  As such, the WPV Directive constitutes a code of conduct with which the Department is charged with enforcement.  Because these elements of the definition of wrongdoing are not in dispute, the question before this Court is confined to whether, as described in Dunn's Petition and the Reports appended thereto, COO's conduct qualified as workplace violence.

Dunn contends the COO's conduct was threatening in violation of the Commonwealth's workplace violence policies.  Although the Department concedes that COO's behavior may have been "disruptive," *see* Resp't's Br. at 9, it maintains that the circumstances here did not rise to the level of workplace violence.  The WPV Directive defines "workplace violence" in pertinent part as:

> Violence that occurs at or is connected to the workplace, including any location if the violence has resulted from an act or a decision made during the course of conducting commonwealth business. <u>Examples of workplace violence include but are not limited to: verbal</u> and written <u>threats, intimidation</u>, stalking, harassment, domestic violence, robbery and attempted robbery, destruction of commonwealth property, physical assault, bomb threats, rape and murder.

*See* Prelim. Objs., Ex. B (Mgmt. Dir. No. 205.33(i), p.2) (emphasis added).[7]

---

[6]  This Court does not opine as to whether management directives in general qualify as codes of conduct under Section 2 of the Whistleblower Law such that their violation may constitute wrongdoing, and thus form the basis for a whistleblower claim.  This Court also does not hold that management directives, even those for which violations are reportable and enforceable, qualify as enforceable codes of conduct under the Whistleblower Law.

[7] We reject as without merit the Department's contention that Dunn did not include sufficient facts to substantiate his claim because he did not attach the Management Directives to his Petition.  This Court has taken judicial notice of executive agency policies.  *See Hill v. Dep't of Corr.*, 64 A.3d 1159 (Pa. Cmwlth. 2013); *Figueroa v. Pa. Bd. of Prob. & Parole*, 900 A.2d 949 (Pa. Cmwlth. 2006) (taking judicial notice of information found on DOC website).  Also, there is no dispute as to the content of the codes of conduct Dunn cited, and the Department appended the cited policies and Management Directives to its preliminary objections, so they are part of the pleadings.

8

Dunn alleges COO threatened and intimidated him by screaming at him on numerous occasions in the workplace. He described COO's conduct in his March Report as a "near physical assault" when COO rose from his chair and raised his fist to Dunn. Pet. ¶4. If such conduct qualifies as a threat or intimidation, it may be reportable under the WPV Directive, and be the type of report that may form the basis for a claim under the Whistleblower Law.

This Court has assessed what conduct qualifies as a "threat" in the employment context, specifically, as a workplace violence incident. *See Aversa v. Unemployment Comp. Bd. of Rev.*, 52 A.3d 565 (Pa. Cmwlth. 2012).[8] In a willful misconduct case in the unemployment context, this Court consulted the dictionary definition of "threat" when examining whether a claimant's conduct violated the workplace violence policy. We held that a "threat or act of intimidation is an act or statement that is intended to prevent another from exercising a legal right." *Id.* at 571. There, the employer argued the claimant violated its workplace violence policy when he emailed a coworker that "I won't forget it" in reference to losing a client account. *Id.* This Court disagreed and determined the email was not a threat because it was not specific enough to show the claimant's intent to commit a future harm. This Court explained:

> [the] e-mail did not threaten [the coworker] with harm to his person or property. It did not state, for example, "I am going to get you" or "You will be sorry." Even those examples may be too vague to convey an intentional threat. By contrast, "I am going to beat you up" or "I am going to burn down your house" leave no doubt in the reader's mind.

*Id.* at 571. We noted the same conduct may have qualified as intimidation, but the employer did not cite that part of its policy as the misconduct. *Id.* at 570 n.5.

---

[8] We noted: "A 'threat' is defined as a communication that conveys an 'intent to inflict harm or loss on another or on another's property.'" *Aversa v. Unemployment Comp. Bd. of Rev.*, 52 A.3d 565, 570 n.7 (Pa. Cmwlth. 2012) (citing Black's Law Dictionary 1519 (8th ed. 2004)).

Relevant here, in *Aversa* we recognized that determining whether an employee's conduct violates a workplace violence policy "requires evidence." *Id.* at 571. Whether conduct is threatening or intimidating depends on the circumstances and the parties, which involves examination of the intent of the person engaged in the conduct and the effect on the purported victim, and the feasibility of the threat or intimidation given the environs. As such, we cannot resolve the issue of whether COO's conduct amounted to wrongdoing as a matter of law on the demurrer.

Significantly, the Department cites no cases that exclude the violation of Management Directives or of workplace violence policies from the definition of "wrongdoing" under Section 2 of the Whistleblower Law. Both Reports describe COO as yelling at Dunn, and in March, standing up and shaking a fist at Dunn. Whether such conduct is intimidating or threatening may be adduced through additional investigation and discovery despite the absence of a specific verbal threat.

Preventing workplace violence is both a public good and vital to the internal administration of a public employer. The allegations described in the Petition and attachments, if proven, may constitute "wrongdoing" in the form of workplace violence, reports of which are enforceable by the Department. As a result, Dunn's reports of COO's conduct may form the basis of a whistleblower claim.

## 2. Causal Connection

Part of a whistleblower's burden is to show a causal connection between the adverse employment action and the report of wrongdoing. *See Gray*, 651 A.2d at 225. This means there must be a clear nexus between the employer's nonperformance of its internal duty and the alleged wrongful discharge. *Id.*

Here, Dunn reported COO's second incident of workplace violence in July 2017, and Hospital discharged him days later. Although generally decisions

in the whistleblower context hold that the timing of the events alone is not sufficient to show causation, case law does not preclude an inference of a causal relationship between a report of wrongdoing and a discharge based on temporal proximity. *But see Golaschevsky*, 720 A.2d at 759-60 (mere fact that discharge occurred a few *months* after report of wrongdoing and that first formal negative actions by the employer occurred after the report are not enough to show a causal connection); *Gray*, 651 A.2d at 225 (fact that petitioner made a report and that "within a given amount of time" later was fired is insufficient to state a claim; granting leave to amend).

In analyzing causation, the timing between the alleged retaliatory discharge and the reports of wrongdoing is relevant. *Golaschevsky*, 720 A.2d at 760 (negative performance evaluation three weeks after report of wrongdoing and another negative evaluation four months after report amounted to only circumstantial evidence that did not demonstrate the requisite causal connection between report of wrongdoing and employee's discharge four months later). Federal case law in the retaliatory discharge context suggests that causation may be inferred when the temporal proximity between the report and discharge is a matter of days as is the case here.[9]

Critically, in reasoning causation could not be inferred from a timeline of months, the *Golaschevsky* Court had the benefit of an evidentiary record, whereas

_____

[9] For retaliatory discharge, "to establish the requisite causal connection, a plaintiff must prove either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). "While there is no bright line test to prove 'unusually suggestive' temporal proximity, the United States Court of Appeals for the Third Circuit has suggested that the lapse between the protected activity and the alleged retaliatory act <u>must be measured in days</u>, not weeks or months." *Scrip v. Seneca*, Civ. No. 14-1215, 2015 WL 3514243, at *7 (W.D. Pa. 2015) (emphasis added) (assessing causal connection in context of retaliatory discharge). *See also Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000); *Diede v. City of McKeesport*, 654 F. Supp. 2d 363, 377 (W.D. Pa. 2009).

11

here, we are at the pleading stage. Dunn alleges: "The reason [he] was terminated was [his] having reported [COO's] threatening behavior and not any alleged unsatisfactory performance on [Dunn's] part." *See* Pet. ¶12. The timeline alleged in Dunn's Petition is a matter of days between his July Report (July 17, 2017), and his discharge (July 21, 2017). At this early stage, the allegations of causation based on temporal proximity and historical animus and pattern of conduct described here (Pet. ¶7, Ex. A) sufficiently asserts a causal connection. *Rodgers*, 659 A.2d at 66.

It bears emphasis that, in its brief, the Department focuses on Dunn's inability to *demonstrate* the requisite causation; however, at this early stage, causation need only be *pled*. The timeline of the two Reports (March and July 2017) is pled, as is the date of Dunn's discharge. Further, Dunn alleges there was a pattern of animus between himself and the COO, (*see* Ex. A), so much so that it led to COO's alleged workplace violence reportable under the WPV Directive.

Additionally, we note that successful challenges to a whistleblower claim based on the lack of a causal connection reached the summary relief stage. *Cf. Golaschevsky* (summary relief stage); *see also Evans* (same). The allegations of temporal proximity and the long-standing animus COO showed Dunn, if proven, may establish the requisite causal connection between Dunn's discharge and the wrongdoing he reported (*i.e.*, COO's workplace violence). Thus, the Department's demurrer to Dunn's claim based on lack of causal connection is overruled.

### IV. Conclusion

In sum, we determine the pleadings are sufficient to state a claim under the Whistleblower Law. *See Rodgers*, 659 A.2d at 66. Dunn alleges he experienced humiliation and felt threatened when COO advanced, out of his chair with fists raised,

yelling at him in the workplace.[10]  He reported the conduct in March, and described COO as repeatedly yelling at him during one-on-one weekly meetings throughout his tenure, and then in July, in front of other coworkers.  It is not necessary at the pleading stage to refer to evidence supporting the claims that he asserts.  Rather, the discovery stage is the appropriate time to investigate whether proof supports the allegations contained in the Petition.  *Id.* at 66 ("[f]urther factual details are readily subject to discovery, and these legal issues may be decided in the course of the litigation").

In this preliminary stage, our review is limited to the pleadings and their attachments.  *See Allen*, 103 A.3d at 369.  We must accept the allegations as true and assess whether the facts as alleged, if proven, could state a claim for relief.  *Id.* Mindful of these principles, the allegations in Dunn's Petition are sufficient to state a claim under the Whistleblower Law.  *See, e.g.*, *Rodgers*; *Podgurski v. Pa. State Univ.*, 722 A.2d 730, 732 (Pa. Super. 1998) ("The alleged instances of wrongdoing coupled

---

[10] Although not cited in its brief, during argument, the Department drew the Court's attention to our unreported decision in *Welby v. State Civil Service Commission (PA DOC-SCI Frackville)* (Pa. Cmwlth., No. 1702 C.D. 2014, filed August 27, 2015), 2015 WL 5510958 (unreported), to support its position that COO's conduct did not constitute workplace violence based on an objective, as opposed to a subjective, standard of threat.  *Welby* involved a former employee's challenge to his discharge from employment in the civil service context based on a violation of the workplace violence policy when the employee told a human resources representative on the telephone about his desire to hit another employee.  Because the employee made the alleged threat on the telephone to a third party, there was no interaction between the employee making the threat and the subject of the threat, and thus no immediate concern for physical safety or escalation of the incident.  As a result, there was not a subjective element as to the effect of the alleged violent conduct on the potential victim because the subject of the threat did not hear it.  Also, there was no potential for physical escalation at the time the verbal threat was made, unlike the incidents described in the Reports, where COO was proximate and visibly angry while yelling at Dunn.  As such, the case is distinguishable.

with the alleged retaliatory conduct cast doubt on whether a demurrer is proper."). For all the foregoing reasons, the Department's preliminary objections are overruled.

_____
J. ANDREW CROMPTON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeff Dunn,                          :
                    Petitioner     :
                                   :
            v.                     :    No.  605 M.D. 2017
                                   :
Pennsylvania Department of Human   :
Services,                          :
                    Respondent     :

# **O R D E R**

     **AND NOW**, this 19th day of April 2021, the preliminary objections filed by Respondent, Pennsylvania Department of Human Services, are OVERRULED.  Respondent shall file and serve an answer to Petitioner Jeff Dunn's petition for review within thirty (30) days of the date of this order.

                               _____

                               J. ANDREW CROMPTON, Judge